**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JESSICA ELLIOTT, INDIVIDUALLY** | § | |
| **& O/B/O L.T.T., A.J.T., & C.M.E.** | § | |
| **(MINORS),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-00135-O-BP** |
| | § | |
| **VINCENT TUCKER,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

In this latest chapter of a bitter, longstanding child custody dispute now pending in state court in San Antonio, *pro se* Plaintiff Jessica Elliott ("Elliott") sues several defendants for interfering with custody of her children. The defendants are the father of her children, Vincent Tucker ("Tucker"); Tucker's former girlfriend, Felicia Sheeley ("Sheeley"); one of Tucker's relatives, Carshunn Washington; Tucker's lawyer in the family court case, Lauren Boysen ("Boysen"); the principal of the Crowley I.S.D. ("ISD") middle school where Tucker enrolled his and Elliott's children, Kimberly Buckhalton ("Buckhalton"); and two ISD police officers, Shannas Jackson ("Jackson") and Ashley McMillon ("McMillon").

Now before the Court are the Motion to Dismiss Plaintiff's Complaint, Brief, and Appendix in Support of Motion to Dismiss filed by Buckhalton, Jackson, and McMillon (ECF Nos. 16, 17, 18) and Boysen's Motion to Dismiss and Reply Brief (ECF Nos. 28, 31). After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motions to Dismiss (ECF Nos. 16, 28) and **DISMISS without prejudice** Elliott's claims against Jackson and McMillon for failure to serve process

properly. Because some of Elliott's claims are not actionable as a matter of law and are not curable by amendment, the undersigned further **RECOMMENDS** that Judge O'Connor **GRANT** Defendants' Motions as to Defendants Boysen, McMillon, Jackson, and Buckhalton on the claims stated in Counts I and II of the Complaint, and as to Buckhalton and Boysen sued under § 1983 for abuse of process (Count IV of the Complaint) and malicious prosecution (Count V), and **DISMISS** those claims **with prejudice**. Further, any claims Elliott made on behalf of her children should be **DISMISSED without prejudice**.

Because Elliott has requested leave to amend her Complaint and this is her first request, Judge O'Connor should grant Elliott leave to file an amended complaint to allege sufficient facts to state claims against Boysen and Buckhalton for interference with custody under the First and Fourteenth Amendments, addressing the deficiencies discussed below, as well as her state law claims against them in accordance with the provisions of this order. If she does so within the fourteen days provided for objections to these findings, conclusions, and recommendation, the case will proceed under Elliott's First Amended Complaint. If she does not, Judge O'Connor should **DISMISS** her interference with custody claims **with prejudice** and **DISMISS** her state law claims **without prejudice** allowing her to refile them in state court should she so choose.

## I.    LEGAL BACKGROUND

Elliott filed her Complaint on February 22, 2022. ECF No. 1. Because she paid the filing fee, the Court ordered her to file proof of proper service within ninety days of filing. ECF No. 5. The Court also warned Elliott that if she did not file a valid return of service or otherwise show that all Defendants were properly served by the deadline, the Court might dismiss the action under Federal Rule of Civil Procedure 4(m) as to any defendant not properly served. *Id.*

After more than ninety days passed since the filing of the Complaint and no proof of service was on file, the Court on May 31, 2022 *sua sponte* extended the deadline another thirty days. ECF No. 6. On June 21, 2022, summonses were returned executed as to all defendants, except for Buckhalton. ECF No. 10. The Court then ordered Elliott to ensure service of process on Buckhalton on or before July 28, 2022, or again risk dismissal under Fed. R. Civ. P 4(m). ECF No. 14. Buckhalton's Summons was returned executed on July 8, 2022. ECF No. 15. The return reflected that Elliott's process server served Buckhalton by leaving the process with Jessica Wells, the ISD communications clerk at the school where Buckhalton was the principal. *Id.* The returns of service for Jackson and McMillon, who also worked at that school, showed that the same communications clerk accepted service on them. ECF No. 10-2 and 10-3. Elliott later served Buckhalton in person on July 26, 2022. ECF No. 24.

## II.    FACTUAL BACKGROUND

In the Complaint, Elliott asserts sweeping allegations of illegal conduct by the defendants, claiming that they deprived her of access to her children. Liberally construed, the Complaint alleges that the defendants employed by the ISD committed crimes against her and her children, and are liable under 42 U.S.C. § 1983 for abuse of process, malicious prosecution, and interference with custody of her children under the First and Fifth Amendments to the United States Constitution. *See* ECF No. 1. She asserts that Boysen is liable under 42 U.S.C. § 1983 for abuse of process, malicious prosecution, interference with custody of her children under the First and Fifth Amendments to the United States Constitution, intentional infliction of emotional distress, and defamation.

According to the Complaint, Tucker took the children from Elliott's home in San Antonio in July 2021 in violation of permanent injunctions prohibiting him from being within one hundred

feet of the home and in violation of a supervised possession schedule in an existing Suit Affecting the Parent-Child Relationship ("SAPCR") order. *Id.* at 5. Tucker then retained Boysen to represent him in the family court case. *Id.* Elliott claims that Boysen brought false allegations before the judge to create a controversy between Elliott and her children. *Id.*

Elliott asserts that in August 2021, Boysen prevented the family court from conducting a hearing on an ex parte Temporary Restraining Order ("TRO") awarded to Tucker the month before. *Id.* At the same time, Elliott went to Crowley Middle School and provided its principal with an order concerning the custody and care of her children and asserted that the children were not to be enrolled in any ISD school. *Id.* at 6. Thereafter, Tucker enrolled the children at the school where Buckhalton is the principal. *Id.* Elliott asserts that the children were already enrolled in a school in San Antonio where they lived with her before Tucker took them in the middle of the night and moved them to Crowley. *Id.*

Elliott next emailed Buckhalton court orders and telephoned her with instructions not to enroll the children in her school. *Id.* Based upon advice from his lawyer, Boysen, Tucker went to the ISD school to enroll the children a few days later. *Id.* Tucker omitted Elliott as custodian from all paperwork and instructed Buckhalton to immediately call Tucker if Elliott appeared at the school. *Id.* The next day, Elliott notified the school that her mother would be picking up the children and subsequently unenrolling them. *Id.* Elliott claims that Boysen provided a "false, unsigned court order that she drafted and emailed to [the school]." *Id.* at 8. While on vacation, Boysen filed with the court and the administrative staff at the school what Elliott believed to be "ex parte communication" with the judge and "impersonat[ed] the Court" in correspondence with the ISD. *Id.*

On October 28, 2021, Elliott went to the school to take her children to a doctor's appointment. *Id.* at 11. She waited for ten minutes before Buckhalton notified her that because of a new court order, she could not release the children to her. *Id.* at 12. School personnel called ISD police officers in to help ensure that Elliott did not leave the school with her children. *Id.* Later that afternoon, Elliott returned to the school with certified documents from the state court and provided them to the administration. *Id.* It is unclear what happened next at the school. In November, Elliott notified the ISD superintendent what had transpired. *Id.* She filed this lawsuit in February 2022.

Jackson, McMillon, and Buckhalton move for dismissal under Federal Rule of Civil Procedure 12(b)(5) due to insufficient service of process, and Buckhalton additionally seeks dismissal under Rule 12(b)(6). ECF Nos. 16, 17, 18. Boysen separately moves for dismissal under Rule 12(b)(6) as well. ECF Nos. 23, 28. Buckhalton asserts qualified immunity as a defense, and Boysen asserts qualified and attorney immunity as defenses. ECF Nos. 17 at 19-20; 28 at 10, 16, 18.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(5)

A motion to dismiss filed under Rule 12(b)(5) seeks dismissal based on "the legal sufficiency of the service of process." *Cordova v. Cuendiz*, No. 4:20-cv-1198-O, 2021 WL 5323762, at *2 (N.D. Tex. Nov. 16, 2021). Plaintiffs, including those appearing *pro se*, must comply with Rule 4, which requires service on a defendant within ninety days of filing suit. Fed. R. Civ. P 4(m); *Lewis v. Sec'y of Pub. Safety & Corr.,* 870 F.3d 365, 369 (5th Cir. 2017). When defendants challenge service of process, the plaintiff has the burden of showing valid service or good cause for failure to effect timely service. *See id.*

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the allegations in the complaint are true." *Id.*

When examining the pleadings of *pro se* parties, courts have wide interpretive latitude. "'However inartfully pleaded,' *pro se* complaints must be held to 'less stringent standards than formal pleadings drafted by lawyers….'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Thus, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). When considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff… and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'"

*Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, courts may consider documents outside the complaint that are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit recommends suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Great Plains Tr. Co.*, 313 F.3d at 329. An "incurable defect" may arise when a complaint's facts are "not actionable as a matter of law." *Taubenfeld v. Hotels.com*, 385 F. Supp. 587, 592 (N.D. Tex. 2004). In such

situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

### C.     42 U.S.C. § 1983

Section 1983 does not provide any substantive rights, but instead "provides a method for vindicating already conferred rights." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). "Section 1983 provides a claim against anyone who under color of any statute, ordinance, regulation, custom, or usage, of any State violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

### D.     Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)); *see also Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (stating qualified immunity "must be pleaded"). It is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis: "(1) whether the facts that a plaintiff has shown establish a violation of a

constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct." *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014). The second prong involves "two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (1998). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236 (2009).

To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that 'every reasonable official would understand that what [s]he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

### E.      Attorney Immunity

Attorney immunity in Texas is a "comprehensive affirmative defense protecting attorneys from liability to non-clients." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). *Troice v. Greenberg Traurig, L.L.P.,* 921 F.3d 501, 505 (5th Cir. 2019). Attorney immunity is true immunity from suit. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016). It is intended to ensure "loyal, faithful, and aggressive representation by attorneys employed as advocates." *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied). Attorney immunity applies to all "actions taken in connection with representing a client in litigation," even wrongful conduct that is "part of the discharge of the lawyer's duties in representing his or her client," as long as it is not "entirely foreign to the duties of an attorney." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 767 (5th Cir. 2019).

Texas courts occasionally grant attorney immunity "at the motion to dismiss stage [where] the scope of the attorney's representation – and thus entitlement to the immunity – [i]s apparent on the face of the complaint." *Id.* at 763. An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that her alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of her duties to her client. *See Cantey Hanger,* 467 S.W.3d at 483-84 (Tex. 2015).

## IV.    ANALYSIS

### A.      Elliott did not properly serve Jackson and McMillon.

Federal Rule of Civil Procedure 4 permits service of process on a defendant by (1) delivering a copy of the summons and of the complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment

or by law to receive service of process. Fed. R. Civ. P. 4(e). Alternatively, a plaintiff may serve a defendant in accordance with state law. *See id.* Texas law provides for service of process by delivering the citation and petition to the defendant or by mailing the citation and petition to the defendant by registered or certified mail. Tex. R. Civ. P. 160. Additionally,

> in an action against an individual, partnership, or unincorporated association that arises in a county in which the individual, partnership or association has an office, place of business, or agency for transacting business in this state, citation or other civil process may be served on an agent or clerk employed in the office, place of business or agency if:
>
> (1) The action grows out of or is connected with the business transacted in this state; and
> (2) The individual, partnership, or association:
>     a. is not a resident of the county;
>     b. is not a resident of this state; or
>     c. is a resident of the county but has not been found for service of process.

Tex. Civ. Prac. & Rem. Code § 17.021.

Service under § 17.021 potentially is applicable to Jackson and McMillon as they were ISD employees who worked in the ISD's schools, the action grows out of events in Crowley, Texas, and they are both residents of the county. ECF No. 17 at 5. However, Elliott has not shown that she was unable to find them for service of process. For service to be proper under § 17.021, the person serving process must certify "that after diligent search and inquiry the individual, partnership, or association cannot be found and served." Tex. Civ. Prac. & Rem. Code § 17.021(b). Only then "can service of process on an agent under this section have the effect of personal service on the principal individual…" *Id.* at (c). Elliott has not made that showing here.

Elliott did not properly serve Jackson and McMillon within the ninety-day period provided in Rule 4(m) and the Court's orders extending the deadline for service. Accordingly, Judge O'Connor should dismiss Elliott's claims against them under Fed. R. Civ. P. 4(m). Because Elliott should be permitted to pursue them in a separate action if she can do so, their dismissal should be

without prejudice. *Lewis v. Sec'y of Pub. Safety & Corr.,* 870 F.3d 365 (5th Cir. 2017) (citing Fed. R. Civ. P. 4(m)). Because Elliott properly served Buckhalton in person on July 28, 2022, she should not be dismissed under Rule 12(b)(5). ECF No. 24.

### B.    *Younger* abstention does not apply here.

At the beginning of her Motion to Dismiss, Boysen urges the Court to dismiss Elliott's action under the *Younger* abstention doctrine because Elliott "remains in the throes of a child custody litigation involving the children of Plaintiff and Defendant Tucker." ECF No. 28 at 12; *see Younger v. Harris,* 401 U.S. 37 (1931). Boysen asserts that abstention is proper because "[t]he docket sheets for several Texas state courts…[are] still ongoing with no closure on the horizon." ECF No. 28 at 12.

In *Younger*, the Supreme Court established that federal courts should not enjoin pending state criminal prosecutions but for unconstitutional exceptions. *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 103 (5th Cir. 1988). Thereafter, the courts have expanded the *Younger* holding beyond state criminal cases and applied it to "pending civil proceedings involving certain orders ... uniquely in furtherance of the state court's ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78, (2013). Under *Younger*, federal courts must abstain if "there is '(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) ... provides an adequate opportunity to raise federal challenges.'" *Id. Younger* "applies to suits for injunctive and declaratory relief." *Google*, *Inc., v. Hood,* 822 F.3d 212, 222 (5th Cir. 2016). But it does not apply here because "requests for monetary damages do not fall within the purview of the *Younger* abstention doctrine," *Allen*, 835 F.2d at 104, and Elliott seeks compensatory, punitive, and exemplary damages in excess of $350,000 plus interest and costs.

ECF No. 1 at 27-28. Because she prays for monetary damages in addition to injunctive relief, *Younger* abstention does not apply.

> ### C.     There is no private right of action for criminal violations.

Elliott asserts claims in Count One of the Complaint for deprivation under color of law in violation of 18 U.S.C. § 242 and Tex. Pen. Code § 39.03 and in Count Two for conspiracy to defraud in violation of 18 U.S.C. §§ 371, 241, 1001 and Tex. Pen. Code §§ 32.48 and 37.02. ECF No. 1 at 16-20. Buckhalton and Boysen argue in response that alleged criminal violations do not provide grounds for civil claims. ECF No. 17 at 8-9. "Courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action." *Back v. UTMB*, No. 6:15-CV-129, 2016 WL 9455135, at *2 (W.D. Tex. Apr. 7, 2016); *see Williams v. Cintas Corp.*, No. 3:07-CV-0561-M, 2007 WL 1295802 (N.D. Tex. Apr. 10, 2007), *rec. adopted*, 2007 WL 1300780 (N.D. Tex. May 2, 2007). Thus, Elliott's claims against Buckhalton and Boysen for criminal violations under color of law and conspiracy to defraud fail to state a violation of a federal right and are not cognizable. *Back*, 2016 WL 9455135 at *2. Because these defects cannot be cured by amendment, Judge O'Connor should dismiss them with prejudice. *Great Plains Tr. Co.*, 313 F.3d at 329.

> ### D.     As a *pro se* litigant, Elliott cannot assert her children's claims.

Elliott next alleges that Tucker enlisted Buckhalton and Boysen to help maliciously kidnap, hide, inflict psychological harm upon her children, L.T.T. and A.J.T., and violate their liberty rights by restraining them against their will. ECF No. 1 at 4, 8. Further she contends that L.T.T., A.J.T., and another child, C.M.E., also suffered loss of consortium in their sibling relationships. *Id.* at 17. Buckhalton and Boysen respond that *pro se* parties such as Elliott may not represent the legal interests of other parties, including their children. ECF Nos. 17 at 7-8, 28 at 6-7.

"In a federal court, a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer." *Gonzalez v. Wyatt*, 157 F.3d 1010, 1021 (5th Cir. 1998); *Allen v. Travis*, No. 3:06-CV-1361-M, 2008 WL 4602734, at *4 (N.D. Tex. Oct. 10, 2008) (Lynn, J.); *Mendheim v. AF & L Ins. Co.*, No. 3:07-CV-0263-D, 2007 WL 2263929, at *2 (N.D. Tex. Aug. 8, 2007) (Fitzwater, J.). Likewise, a *pro se* party cannot proceed "as 'next friend' on behalf of her minor child." *Sprague v. Dep't of Family and Protective Services*, 547 F. App'x 507, 508 (5th Cir. 2013), *cert. denied*, 507 U.S. 1223 (2014); *see also Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978) ("individuals not licensed to practice law by the state may not use the 'next friend' device as an artifice for the unauthorized practice of law").

Nor may a grandfather proceeding *pro se* represent his grandchild. *Aduddle v. Body*, 277 F. App'x 459 (5th Cir. 2008) (even if grandfather were grandchild's legal guardian, since he was not a lawyer, he could not represent her *pro se*). Although a plaintiff can proceed as a guardian under Rule 17(c) of the Federal Rules of Civil Procedure, "representation by an attorney would still be required." *Mendheim*, 2007 WL 2263929 at *2, n.3. An individual may proceed *pro se* in civil actions in federal court, *see* 28 U.S.C. § 1654, but those not licensed to practice law may not represent the legal interests of others. *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210 (5th Cir. 2016).

There is no evidence or other indication that Elliott is an attorney. Consequently, Judge O'Connor should dismiss claims brought on behalf of her children because Elliott cannot proceed *pro se* in this civil action on behalf of anyone other than herself. Dismissal should be without prejudice so that a lawyer could pursue the children's claims in a proper forum.

E.    **Elliott does not allege a constitutional violation under Section 1983.**

Because § 1983 itself is not an independent cause of action, but rather a vehicle to challenge alleged violations of federal statutory or constitutional rights, Elliott must plead constitutional or statutory violations to withstand a motion to dismiss. *See Fennell,* 804 F.3d at 412. Elliott asserts claims under § 1983 for abuse of process (Count IV), malicious prosecution (Count V), and interference with custody (unnumbered Count) pursuant to the First and Fifth Amendments of the U.S. Constitution. ECF No. 1 at 21-28. In considering motions to dismiss § 1983 claims against public officials, the Court must not accept conclusory allegations or unwarranted deductions of fact as true because a heightened pleading standard requires "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

1.    **Abuse of process and malicious prosecution**

Elliott alleges in Counts IV and V of her Complaint that Boysen's actions while under the color of law amount to abuse of process and malicious prosecution. ECF No. 1 at 21-27. Elliott states the same facts for both counts, and Boysen responds with the same defenses. Elliott alleges bad acts under the color of law including "improper use of judicial process on four known occasions, impersonating the Court, and defrauding the Court, all resulting in [Elliott's] injuries and damages." ECF No. 1 at 24. Elliott asserts that Tucker, aided by Boysen as his counsel, "improperly obtained a TRO to obstruct the Court, bias the Courts, to obtain a collateral advantage in their Petition to Modify." *Id.* at 22. She claims that Boysen's "perverted" use of the TRO to deny Elliott access and possession of her children was "not authorized by law" and that Boysen coerced the court to obtain a collateral advantage to "[m]odify custody in a case whereby the Court did not have subject matter jurisdiction to enact modifications." *Id.* Boysen allegedly "instituted

an improper use of obtaining a TRO in the Tarrant County District Court… to obscure from the trial court essential facts of the case." *Id.*

Other alleged bad acts included Boysen's filing "a motion to confer with children which ha[d] no finding in fact or law for a hearing on an ex-parte TRO," "deliberately [seeking] to misuse the Court's discretion by obstructing Plaintiff's access to an adjudication hearing," and "in effect, redirecting the proceedings into a modification hearing for custody in a Court that lacked proper jurisdiction." *Id.* at 23. Elliott claims Boysen, acting in concert with Tucker, provided the court "a sworn affidavit in their Controverting Affidavit on Plaintiff's Motion to Transfer" that was "verifiably perjurious and the use of it was a blatant abuse of process filed solely for the purpose of delaying a timely hearing that was set before the court." *Id.*

Elliott asserts that Boysen used a second ex parte TRO in another court "not privy to the facts of the case, to once again deny Plaintiff access to her children." *Id.* She "previously offered false documents to a school alleging [them] to be rendered by a Court restricting the Plaintiff from all access to her children…to intentionally and illegally deprive Plaintiff of her constitutional rights." Boysen allegedly acted with "malice" when filing the TROs and "lacked probable cause, and in lacking cause to bring about the civil proceeding, alternatively offered the Court an affidavit of knowingly false and defamatory statements regarding Plaintiff to manufacture a controversy." ECF No. 1 at 25. She alleges that Boysen "willfully and knowingly exploited the rules allowing any judge to hear [her] ex-parte Motion for TROs." *Id.* at 26. Further, Boysen "intentionally [sought] out a judge not privy to the underlying cause" and because she intentionally failed to attach the SAPCR to her pleadings, Elliott believes that "she clearly set out to deceive and defraud the Court." *Id.* Taken together, Elliott pleads that because of this "intimidating, threatening

behavior of the Defendant [Boysen], plaintiff suffered harm [from] the use of a patently biased judge." *Id.* at 23.

Boysen argues three defenses in her Motion. ECF Nos. 28 at 13-16. First, she asserts attorney immunity. *Id.* Second, she claims that the Court lacks jurisdiction to consider Elliott's claims under § 1983. *Id.* Third, she argues that if Elliott intended to assert state law claims for abuse of process and malicious prosecution, she did not plead the required elements. *Id.*

### a.    Boysen is protected by the attorney immunity doctrine.

Boysen counters Elliott's abuse of process and malicious prosecution claims by first invoking attorney immunity. ECF No. 28 at 13. She argues that the Complaint only plausibly alleges facts showing that Boysen's acts, if harmful to Elliott, resulted solely through her representation of Tucker in the couple's ongoing custody dispute in family court. ECF No. 28 at 13-15. These actions include Boysen's filing requests for TROs, motions for the judge to confer with the children, and an Affidavit in Opposition to Plaintiff's Motion to Transfer. *Id.* at 14. Boysen asserts that the filing of these pleadings and orders, even if by wrongful means, are appropriate actions for an attorney to take in the zealous representation of her client, and even if the presiding judge was biased or entered defective orders. *Id.*

Boysen is correct that her "actions in this case meet the requirements for the application of attorney immunity." *Troice,* 921 F.3d at 505. Attorney immunity protects all conduct, "even wrongful conduct that is part of the discharge of the lawyer's duties in representing his or her client," as long as it is not "entirely foreign to the duties of an attorney." *Ironshore Europe DAC,* 912 F.3d at 765. Such is the case here with Boysen's actions in representing Tucker in the related family law cases. Filing pleadings and motions with a court on behalf of a client and ensuring that any court orders be followed are functions well within an attorney's scope of duties to her client.

17

None of the actions described in the Complaint are outside the acceptable bounds for an attorney acting as counsel and advocate for her client in what appears to be a difficult custody case. Dismissal is appropriate for Elliott's claims against Boysen on this point.

> **b.  State law abuse of process and malicious prosecution are not actionable under § 1983.**

Boysen argues in the alternative, that civil rights statutes such as § 1983 do not impose liability for violations arising under state law as there is no federal due process issue. ECF No. 28 at 15; *See Deshaney v. Winnebago Cnty. Dep't of Sec. Serv.,* 489 U.S. 189, 200-03 (1989) (section 1983 claims cannot be based on a violation of state law).

The Court liberally construes Elliott's abuse of process and malicious prosecution pleadings as allegations of constitutional claims under § 1983. However, Elliott has not adequately pleaded any underlying constitutional violation that would support a § 1983 claim. The Fifth Circuit has made clear that "there is no constitutional right to be free from abuse of process." *Morgan v. Chapman,* 969 F.3d 238, 247 (5th Cir. 2020). Similarly, there is no constitutional right to be free from malicious prosecution. *Id.* at 246. Because § 1983 cannot stand alone without an underlying constitutional or statutory violation, Judge O'Connor should grant Boysen's Motion to Dismiss on this point.

> **c.  The Court should not exercise supplemental jurisdiction over Elliott's state law claims of abuse of process and malicious prosecution.**

Boysen argues that Elliott has not properly pleaded either abuse of process or malicious prosecution as a state law claim over which the Court might have supplemental jurisdiction. ECF No. 28 at 13-16. Whether Elliott intended to assert a state law cause of action for abuse of process or malicious prosecution, the Court would only have supplemental jurisdiction over those claims once the federal claims are dismissed because the parties are not of diverse citizenship and no other

ground of subject matter jurisdiction exists on the facts alleged. Elliott's state law claims for abuse of process and malicious prosecution do not raise any issue of federal law. *Pennie v. Obama*, 255 F. Supp. 3d 648, 677 n.5 (N.D. Tex. 2017). Accordingly, the Court should decline to exercise supplemental jurisdiction over the abuse of process and malicious prosecution claims if the separate grounds for federal jurisdiction no longer exist. *Id.* at 657; *See* 28 U.S.C. §§ 1367(c), 1331, 1332(a).

### 2.    Constitutional claims for interference with custody

In the last unnumbered count of the Complaint, Elliott appears to allege that Boysen and Buckhalton interfered with her right to custody of her children under the First and Fifth Amendments to the U.S. Constitution. ECF No. 1 at 27. The Fifth Amendment applies to the federal government, so liberally construing Elliott's claims, the Court construes her allegations against state actors under the Fourteenth Amendment. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Elliott asserts that Boysen "acting under color of law… offered false documents to a school alleging to be rendered by a Court restricting the Plaintiff from all access to her children." *Id.* at 24. She also contends that Boysen either personally or through her staff "appeared at [the school] to procure written statements from the Office staff under false light that Plaintiff was a threat to her own children." *Id.* at 25. On December 11, 2021, Boysen also allegedly "caused the [court] proceeding [to expire] by order of law without a hearing and without entering an order of temporary or permanent injunctions against Plaintiff…suffer[ing] interference with custody of her children." ECF No. 26.

Elliott claims that in August 2021, "Buckhalton acted with personal and racial prejudice, absent any authority or basis to usurp the existing Court orders, [and] unlawfully restrained [the] children against their liberty rights." *Id.* at 8. Elliott contends that on October 28, 2021, Buckhalton

"interfered with Plaintiff's rightful, lawful, constitutionally protected access to the care and custody of her children in this school… Plaintiff had not enrolled her children in this school, nor consented to their enrollment… all actions taken by persons employed by [ISD] result[ed] in injury." ECF No. 1 at 11. Elliott alleges that Buckhalton had previously acknowledged court orders that "the Mother was Sole Managing Custodian of the children and Father had no rights to education decision-making or to be in possession of the children." *Id.*

Elliott states Buckhalton further violated her rights when refusing to release the children to Elliott. Buckhalton "cited a new order filed and presented to her, that terminated Plaintiff's parental rights." *Id.* at 12. Buckhalton would not show her the new court orders and Elliott alleges that these new orders proved contradictory from their earlier email communications. *Id.* Later the same day, Elliott reappeared at the school with certified, stamped court documents that she provided, thus "requiring by law to release the students to Plaintiff." *Id.* at 13. Elliott claims the acts of restraining the children on campus against the parent's wishes and court orders fall outside the scope of Buckhalton's employment duties. She alleges that Buckhalton's actions on October 28, 2021 were outside the scope of her duties as a school principal and that her duties were ministerial and not discretionary thereby eliminating the qualified immunity defense. ECF No. 1 at 11, 14.

### a.    Boysen properly invoked attorney immunity.

In response to the custody interference claims against her, Boysen again asserts attorney immunity as a defense because all of her actions were within the scope of her duties as a lawyer to her client. ECF No. 28 at 17-18. As with the other counts, there is nothing on the face of the Complaint relating to Boysen that even if wrongful, is outside the duties of an attorney. *See Cantey Hanger,* 467 S.W.3d at 481. Because Boysen's conduct was within the scope of her legal representation of a client, attorney immunity applies.

**b.    Qualified immunity shields Buckhalton.**

It is unclear whether Elliott sues Buckhalton in her official or individual capacity, but her assertion that her actions on October 28, 2021 were outside of her official duties as a school principal suggest that she sues her in an individual capacity. *See* ECF No. 1 at 11, 14. Qualified immunity applies to claims against government officials in their individual capacities and not their official capacities. *See Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Although Elliott asserts that Buckhalton's action were ministerial, thus eliminating qualified immunity as a defense, the Court does not agree. In Elliott's Complaint and in Buckhalton's Motion, each party acknowledges that Tucker and Elliott provided the school conflicting court orders pertaining to who had legal custody of the children. ECF Nos. 17 at 14; 1 at 23, 27. The determination of which parent is legally entitled to take children out of school where the parents are embattled in a custody dispute does not meet the requirement of a "ministerial duty" under qualified immunity jurisprudence. *See Vicari v. Ysleta Indep. Sch. Dist.*, 546 F. Supp. 2d 387, 421 (W.D. Tex. 2008).

**i.    Individual capacity**

Buckhalton argues that she is entitled to qualified immunity from Elliott's claims. ECF No. 17 at 9-14. Before arguing her points, Buckhalton asks the Court to take judicial notice under Rule of Evidence 201 of several court documents in connection with the custody of Elliott's children, L.L.T. and A.J.T. ECF No. 17 at 11-12; *see Davis v. Bayless,* 70 F.3d 367, 372 n.3 (5th Cir. 1995). For purposes of this Motion to Dismiss, the undersigned takes judicial notice of the certified court documents in Defendants' Appendix 1-56. ECF Nos. 18; 17 at 11-12. *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008).

Buckhalton acknowledges that the Fourteenth Amendment "protects a parent's right to the care, custody, control, and management of their children from government interference." ECF No. 17 at 19; *Williams v. Blaisdell,* 173 F. Supp. 2d 574, 580 (N.D. Tex. 2001). However, she contends that Elliott cannot show that she had legal custody of the children at the time she attempted to take them from the school. ECF No. 17 at 19. The family court orders Buckhalton produced reflect that the family court had entered two TROs against Elliott. ECF No. 18 at 25, 28. On October 28, 2021, the family court issued another TRO issued against her. *Id.* at 52. Because legal custody of the children at the time was not certain, there could be no violation of Elliott's constitutional right to care, control, and have custody of her children.

And even if there had been a constitutional violation, Elliott has not offered any legal authority to show that the law was so clearly established law at the time that every school principal, such as Buckhalton, would have known that her conduct was in violation of Elliott's constitutional rights. To the contrary, the documents offered by Buckhalton would suggest that any reasonable school official would have acted as Buckhalton did by refusing to release the children based on the most current court orders the ISD had in its possession at the time. *See* ECF No. 18. Thus, qualified immunity shields Buckhalton from liability for Elliott's claims. *Wyatt v. Fletcher,* 718 F.3d 496, 502 (5th Cir. 2013).

### ii.    Official capacity

Alternatively, if Elliott sues Buckhalton in her official capacity, the Courts must dismiss the claim because it is deemed a claim against the entity itself, in this case the ISD. *Bradyn S. v. Waxahachie Indep. Sch. Dist.,* 407 F. Supp. 3d 612, 617 n.2 (N.D. Tex. 2019). Here, Elliott has not pleaded that there was an ISD policy, custom, or procedure that resulted in the deprivation of

her rights. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Accordingly, Elliott has not stated a viable claim against Buckhalton in her official capacity.

> **E.    The Court should decline to exercise supplemental jurisdiction over Elliott's intentional infliction of emotional distress and defamation claims.**

Liberally construed, Elliott's Complaint also contains state law claims for intentional infliction of emotional distress and defamation. ECF No. 1 at 27. Neither states a claim under federal law. *Pennie*, 255 F. Supp. 3d at 677 n.5. As with her other potential state law claims of abuse of process and malicious prosecution, Judge O'Connor should decline to exercise supplemental jurisdiction these claims if the separate grounds for federal jurisdiction no longer exist. *Id.* at 657; *See* 28 U.S.C. §§ 1367(c), 1331, 1332(a).

## VI.    CONCLUSION

The undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motions to Dismiss (ECF Nos. 16, 28) and **DISMISS without prejudice** Elliott's claims against Jackson and McMillon for failure to serve process properly. Because some of Elliott's claims are not actionable as a matter of law and are not curable by amendment, the undersigned further **RECOMMENDS** that Judge O'Connor **GRANT** Defendants' Motions as to Defendants Boysen, McMillon, Jackson, and Buckhalton named in Counts I and II of the Complaint, and as to Buckhalton and Boysen sued under § 1983 for abuse of process (Count IV of the Complaint) and malicious prosecution (Count V), and **DISMISS** those claims **with prejudice**. Further, any claims Elliott made on behalf of her children should be **DISMISSED without prejudice** so that a lawyer could pursue those claims in the appropriate forum.

Because Elliott has requested leave to amend, and this is her first request, Judge O'Connor should grant her leave to file an amended complaint to allege sufficient facts to state claims against Boysen and Buckhalton for interference with custody under the First and Fourteenth Amendments,

addressing the deficiencies discussed above, as well as her state law claims against them in accordance with the provisions of this order. If she does so within the fourteen days provided for objections to these findings, conclusions, and recommendation, the case will proceed on those claims under Elliott's First Amended Complaint. If she does not, Judge O'Connor should **DISMISS** her interference with custody claims **with prejudice** and **DISMISS** her state law claims **without prejudice** allowing her to refile them in state court should she so choose.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on November 29, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

24